FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>*ex rel.* RELATOR LLC, a California limited liability company,<br><br>Relator,<br><br>v.<br><br>BOB GUSELLA, an individual, THOMAS YARBROUGH, an individual, HOUSTON OAKS VENTURE LP, a Texas limited partnership, HOUSTON OAKS INVESTMENTS, LLC, a Texas limited liability company, and DOES 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**<br><br>**FILED *IN CAMERA* UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT PLACE ON PACER**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**FILED UNDER SEAL**

**BOB GUSELLA**, an individual, **THOMAS YARBROUGH**, an individual, **HOUSTON OAKS VENTURE LP**, a Texas limited partnership, **HOUSTON OAKS INVESTMENTS, LLC**, a Texas limited liability company, and DOES 1-10:

## JURISDICTION & VENUE

1. This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

2. Plaintiff The United States of America is also located in the Southern District of Texas. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Southern District of Texas, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

3. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendants' acts that form the basis of this Complaint occurred in the Southern District of Texas.

4. Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

1

**FILED UNDER SEAL**

**INTRODUCTION AND SUMMARY**

5. In this matter the managers of a private country club used the club to misappropriate millions of dollars from the US Federal government's Paycheck Protection Program ("PPP"). In order to obtain the loan, the Defendants presented many falsified loan documents to the SBA. Defendants did not have any economic need for the loan, they simply took advantage. Defendants had no economic need for payroll assistance, assuming the loan was used on payroll. Defendants falsified additional documents which were presented to the government to obtain total loan forgiveness, billing millions to the US taxpayer.

6. Bob Gusella, Thomas Yarbrough, and Houston Oaks Investments, LLC used their private country club Houston Oaks Venture LP ("Country Club Borrower") to apply for and receive a PPP loan totaling **$1,511,500.00**, purportedly to cover payroll costs. However, the Defendants:

   a. Falsified loan eligibility;

   b. Falsified the use of the loans on authorized expenses;

   c. Falsified the economic necessity for the loan; and

   d. Falsified the need for loan forgiveness.

7. <u>Obvious Regulations Regarding Private Clubs</u>. Country Club Borrower applied for and received a PPP loan in the total amount of **$1,511,500.00**, purportedly to cover payroll costs, however this loan was not authorized because the country club which is owned and operated by the Country Club Borrower is a <u>private club that limits the number of memberships for reasons other than capacity</u> and therefore *ineligible* to receive PPP loans. Although the vast majority of American industries are allowed to take PPP loan, a very few select industries are not allowed. One such type of business, are private clubs that limit access for reasons other than

2

**FILED UNDER SEAL**

capacity. The rationale is that private clubs should not be able to receive money from American taxpayers and then restrict the same American taxpayers from using their clubs for reasons other than capacity.

8. No Economic Necessity. The PPP Loan was not necessary to support the ongoing operations of the Country Club Borrower. They did not need the money. On information and belief, membership dues were not diminished as a result of COVID-19. On information and belief, Defendants had access to ready funds because membership dues were fully paid with minimal or no delinquencies at the time Defendants applied for and received the Loan and when they applied for and received forgiveness of the Loan. Therefore, when Defendants made the Economic Necessity Certification (defined below), the certification was false.

9. Money Not Returned. The loan was taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. The $1,511,500.00 in funds should have been returned immediately. These loans should never have been sought in the first place. Yet the Defendants went further by obtaining total loan forgiveness, billing the US taxpayers more than one and a half million dollars. *Defendants have not returned the loan proceeds.*

10. Further Falsification on Loan Forgiveness. Defendants falsified further documents to receive loan forgiveness. Defendants had to attest as to the use of the funds and the amount used on authorized purposes. They were not because Defendants could not comply with the requirements of forgiveness given their business type. So Defendants also lied on their forgiveness documents and application.

11. Defendants' False Statements and Fraud. Defendants knowingly and intentionally made many materially false statements to the government and bank to obtain the loans.

3

**FILED UNDER SEAL**

12. Plaintiff brings this action as relator on behalf of the United States to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. Plaintiff gave notice of its intent to file and full disclosure of the evidentiary basis to the Department of Justice ("DOJ").

## THE PARTIES

13. Plaintiff is a California limited liability company with its principal place of business in Los Angeles, California.

14. Defendant Bob Gusella is an individual and, at all relevant times herein, is and was the Chief Executive Officer of Country Club Borrower.

15. Defendant Thomas Yarbrough is an individual and, at all relevant times herein, is and was the Chief Financial Officer of Country Club Borrower.

16. Defendant Houston Oaks Venture LP is a Texas limited partnership with its principal place of business in Houston, Texas.

17. Defendant Houston Oaks Investments, LLC, a Texas limited liability company with its principal place of business in Houston, Texas.

18. Country Club Borrower is the owner and operator of The Clubs at Houston Oaks ("The Country Club"), which is an exclusive, members-only country club located in Houston, Texas.

19. The true names and capacities, whether individual, partner, associate, corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein mentioned. Plaintiff will seek

**FILED UNDER SEAL**

leave of Court to amend this Complaint to reflect the true names and capacities of said DOES, and add appropriate charging allegations against said DOES when their identities have been ascertained. Plaintiff is informed and believes that each of the DOE Defendants were responsible in some manner for the injuries and damages alleged herein, and/or for the wrongful acts of some or all of the Defendants.

20. Plaintiff is further informed and believes that each of the Defendants, whether specifically named or named as a DOE, was an agent, employee, servant and/or representative of each of the remaining Defendants, and, in doing or failing to do the things alleged herein, was acting within the course and scope of said agency, employment, service and/or representation.

21. Plaintiff is further informed and believes that each of the Defendants, whether specifically named herein or named as a DOE, approved, ratified and/or acquiesced in the acts and omissions of each of the remaining Defendants.

22. Plaintiff is further informed and believes that each of the Defendants herein, whether named as DOES or otherwise, acted in concert, agreement and conspiracy with the other Defendants for the common purpose of engaging in a scheme to defraud as alleged below.

**THE CARES ACT AND PAYCHECK PROTECTION PROGRAM**

23. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for eligible individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

**FILED UNDER SEAL**

24. The CARES Act authorized loans to eligible small businesses struggling to pay employees and stay in business as a result of the devastating effect of the COVID-19 pandemic and resulting restrictions.

25. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

26. On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and authority for the PPP. On June 5, 2020, the PPP Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

27. Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend all loan proceeds only for employee compensation, rent or mortgage, and certain other specified expenses. Depending on their use of the loan proceeds as certified, they could qualify for loan forgiveness, up to the full amount of the loan.

28. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or "Second Draw" loan, an eligible business (through its authorized representative) had to sign and submit a PPP loan application (SBA Form 2483) online through the lender's platform. The PPP loan application (SBA Form 2483) required the business (through its representative) to acknowledge the PPP program rules and make certain certifications in order to be eligible to obtain the PPP loan, including certifying that their certifications were true.

29. Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application

6

**FILED UNDER SEAL**

(SBA Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

30. After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program

Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | | |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐ Yes | ☐ No |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

7

**FILED UNDER SEAL**

31. SBA Form 2483 includes the following certification, among others: "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the "Understanding Certification").

32. SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

33. SBA Form 2483 also includes the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

34. SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

35. SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification").

**FILED UNDER SEAL**

36. SBA Form 2483 also includes the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program" (the "Single Loan Certification").

37. SBA Form 2483 also includes the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (the "No False Statements Certification").

38. After the borrower submitted a PPP loan application, it was processed by the participating lender. If the PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lender and be responsible for its repayment.

39. Under applicable SBA rules and guidance, recipients of PPP loans could apply to have principal and interest on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of their employees" during the loan period, that the loan proceeds had been

**FILED UNDER SEAL**

spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

40. Loans could only be used for certain permitted expenses, such as to pay employees' salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to COVID19.

41. More specifically, the loan forgiveness application (SBA Form 3508), revised as of July 30, 2021, included the following certifications, among others:

(1) The dollar amount for which forgiveness is requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

- includes payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

(2) I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

**FILED UNDER SEAL**

(3)  The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

(4)  The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.

42.  13 C.F.R. 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes lenders like Defendant ...

**"(i) Private clubs and businesses which limit the number of memberships for reasons other than capacity"**

43.  On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. *See* Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at: https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. Id.

44.  With respect to the PPP, the January 6, 2021, Interim Final Rule provided Clarification Regarding Eligible Businesses, specifically 13 C.F.R. Parts 113, 120 and 121.

FILED UNDER SEAL

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR 120.110 eligible for a PPP loan?"*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter 6.**

45.     These PPP Loan eligibility rules are also included in the U.S. Small Business Administration, Office of Financial Assistance, Lender and Development Company Loan Programs, SOP 50 105(B), page 85 and 86 which says in part:

> ***CHAPTER 2: ELIGIBILITY FOR 7(A) GUARANTY LOAN PROGRAM II. SUMMARY OF ELIGIBLITY REQUIREMENTS***
>
> *D. The following businesses are not eligible: (13 CFR 120.110)*
>
> *9. Private clubs and businesses which limit the number of memberships for reasons other than capacity*

### DEFENDANTS' FRAUD

46.     During round 1 of the paycheck protection program, Country Club Borrower applied for a PPP loan for $1,511,500.00. It was approved on April 7, 2020, by the SBA for the full amount, which was disbursed. The loan was facilitated by Frost Bank. Country Club

12

**FILED UNDER SEAL**

Borrower received 100% of the approved amount. The loan is hereafter referred to as "PPP Loan." This loan was forgiven on November 5, 2020.

47. Country Club Borrower is a private, member's only country club and has policies and procedures in place that limit the number of memberships for reasons other than capacity, yet did not disclose this information on its PPP loan application and supporting documents. Country Club Borrower is expressly prohibited from receiving SBA loans, including PPP loans. The Country Club CEO, Bob Gusella and Country Club CFO Thomas Yarbrough are sophisticated, experienced businessmen. They knew about the restrictions. The legal and financial experts they hired over the years would have known this. They intentionally broke these clear rules knowing what they were doing. They successfully would have had to manage and investigate the many regulations encountered along the way. They would have quickly discovered that these loans were not permitted, especially given the amounts involved and the expertise and capabilities of the people working in their company.

48. In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required Economic Certainty certification on the Borrower Application Form stating that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

49. Country Club Borrower abused the PPP program, from misrepresenting its economic need for the loan to willfully ignoring its ineligibility, to maximizing the amount of the loan and then obtaining loan forgiveness. Discovery will reveal more than $1.5 million in PPP funds were actually spent, but what is obvious is that Defendants *did not need any money from US taxpayers*. Country Club Borrower is and was highly profitable during the pandemic, just like most in their industry. Country Club Borrower did not suffer any business loss and certainly had

**FILED UNDER SEAL**

the money to pay their own worker wages. Country Club Borrower's revenue comes from membership dues paid by its millionaire and billionaire clientele, who continued to pay their membership dues throughout the course of the pandemic.

50. Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

51. The proceeds of the PPP Loans were not and could not have been used only for authorized purposes consistent with the PPP Rule, because, among other things, the Country Club is not an eligible business, because it is a private club that restricts membership for reasons other than capacity. Therefore, when Defendants made the Use of Proceeds Certification, the certification was false.

52. The proceeds of the PPP Loans were not necessary to support the ongoing operations of the Country Club. There is every indication Defendants' business continued to thrive and have positive revenue. There is no indication that members stopped paying their membership dues or that the Clubs implemented any pause in member obligations to pay. There is no evidence of any loss. Business was good. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

53. On their loan applications, Defendants intentionally made several key statements which were false and intended to deceive. These key false statements by Defendants made it possible for them to get the loans. By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

**FILED UNDER SEAL**

54. The Defendants actively pursued and obtained loan forgiveness. Because Defendants are prohibited from obtaining any PPP loans, its representation on its forgiveness application that it spent 100% of the loan proceeds on eligible expenses was not truthful. The SBA would not have forgiven the loans if they knew Defendants' certifications described above were false. They also would not have forgiven the loans if they knew the proceeds had been used to increase profits instead of paying their employees.

55. As a result of the forgiveness, Defendants have not repaid the loan and have kept the proceeds, and the loan has been repaid with money from taxpayers, including the small businesses and owners who were supposed to receive the PPP funds instead of repaying a profitable mortgage lender's loan that it never should have received, let alone had forgiven.

## THE FALSE CLAIMS ACT

56. The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

> (1) . . . any person who—
>
> > (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
> >
> > (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,
> >
> > . . .
> >
> > (G) knowingly makes, uses, or causes to be made or used, a false

**FILED UNDER SEAL**

record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

57.  A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States

16

**FILED UNDER SEAL**

Government sustains because of the act of that person." 31 U.S.C. § 3729(a). *See* 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 C.F.R. Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.federalregister.gov/documents/2022/05/09/ 2022-09928/civil-monetary-penalties-inflation-adjustments-for-2022.

## FIRST CAUSE OF ACTION

### FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))

58.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

59.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

60.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, each of Defendants' Economic Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and Payroll Certifications described above all were knowingly false, and relied upon by lenders and the SBA in approving the PPP Loans. Their request for forgiveness contained a further misrepresentation that the loans had been used only for authorized purposes.

61.     By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

**FILED UNDER SEAL**

62. The Government and its agents and contractors relied on those false statements in approving and making the loans and subsequently forgiving them, leaving the burden of repayment on taxpayers.

63. Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein, and attorneys' fees in an amount to be proven.

## CONCLUSION

64. Bob Gusella and his company abused the PPP. The PPP was meant for struggling businesses. Now that program is dry. The American people have a right to reconciliation.

## PRAYER FOR RELIEF

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**FILED UNDER SEAL**

Dated: October 24, 2024

*/s/ Kristen L. Nelson*

Kristen L. Nelson (TX Bar No. 3715106)
knelson@hechtpartners.com
HECHT PARTNERS LLP
2121 Avenue of the Stars
Century City, CA 90067
Tel. (646) 490-2408

Attorneys for Plaintiff-Relator
RELATOR LLC

19